UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CHEMO IBERICA, S.A.,

                    **Plaintiff,**

v.

BETACHEM, INC.,

                    **Defendant**

Civ. No. 13-cv-4742 (KM) (MAH)

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

    The plaintiff, Chemo Iberica, S.A. ("Chemo"), brought this action seeking to recover payment for pharmaceutical products provided to the defendant, Betachem, Inc. ("Betachem"). Betachem responded by asserting counterclaims against Chemo for unpaid sales commissions. Magistrate Judge Hammer previously granted Chemo's motion for a more definitive statement, ordering Betachem to file an Amended Answer and Counterclaim. (ECF no. 18) Betachem filed its First Amended Answer and Counterclaims on March 17, 2014 ("FAC"). (ECF no. 22) Chemo moved to dismiss the counterclaims, and on March 25, 2015, this Court granted that motion and dismissed the counterclaims without prejudice to the filing of an amended pleading within thirty days ("Opinion"). (ECF no. 33) Betachem submitted its Second Amended Answer and Counterclaims on April 21, 2015 ("SACC"). (ECF no. 34) Now before the Court is Chemo's motion to dismiss the SACC and for sanctions. (ECF no. 35)

    This opinion, intended for the parties, assumes familiarity with my prior opinion (ECF no. 22). The governing legal standards under Rule 12(b)(6), other pertinent case law, and essential facts are set forth there.

    Oddly, this iteration of the counterclaims is a case of "less is more." In its SACC, Betachem has abandoned its attempt to allege that the parties had

1

three complex but unexpressed agreements, which nevertheless had titles. It has abandoned its allegation that the parties had a tacit agreement to engage in unspecified post-severance "pending and continual projects" for three years on a "5-3-1" commission basis. Betachem has abandoned two of the former counterclaims, and now pleads just three: breach of contract (Count 1), unjust enrichment (Count 2), and implied contract (Count 3).

Most significantly, Betachem now explicitly focuses on the orders pending as of September 20, 2011 (the date of termination) and any new orders that came to Betachem through December 31, 2011. (*See* ECF no. 36 at 1 ("Remaining in Betachem's setoff and counterclaims are actual already-earned commissions and adjustments between the parties for the business that has been conducted and concluded")) Chemo allegedly agreed in connection with the termination on September 20, 2011, to honor those orders. (SACC ¶ 56)

### i.    **Breach of Contract (SACC Counts 1 and 3)**

Counts 1 and 3 of the SACC are substantially similar. Count 1 alleges breach of contract based on "custom and practice" between the parties. Count 3 alleges breach of implied contract based on the "conduct of the parties in light of the surrounding circumstances as well as their tacit understanding." I take this to include the alleged oral agreement on September 20 to honor pending orders and new orders through the end of 2011.

A contract, to the extent it is not express, may be implied. A plaintiff seeking to state a claim for implied contract must show the same elements as are required for express contracts – offer, acceptance and consideration – except that proof of an implied contract is demonstrated by the "conduct of the parties showing, in the light of surrounding circumstances, their tacit understanding." *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 644 (3d Cir. 1998).

To the extent the contract is express, but lacks a key term, such a term may be implied:

> Where a contract contains vague provisions, New Jersey courts will fill gaps or interpret missing terms in it so as to furnish sufficiently

2

> definite meaning to the contract so long as there is evidence that the parties intended to enter into a bargain. *Paley v. Barton Sav. & Loan Ass'n*, 82 N.J.Super. 75, 196 A.2d 682, 686 (1964); *accord Driscoll Constr. Co. v. Dep't of Transp.*, 371 N.J. Super. 304, 853 A.2d 270, 276 (2004) ("[W]here there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury."); *Satellite Ent. Ctr., Inc. v. Keaton*, 347 N.J. Super. 268, 789 A.2d 662, 667 (2002). In construing vague provisions, New Jersey courts "will imply a reasonable missing term or, if necessary, will receive evidence to provide a basis for such an implication." *Satellite Ent.*, 789 A.2d at 667. In particular, courts will look to, among other things, all the relevant circumstances surrounding the transaction, as well as evidence of the parties' course of dealing, usage and course of performance. *See, e.g., Leitner v. Braen*, 51 N.J. Super. 31, 143 A.2d 256, 260–61 (1958) (holding that contract for "the usual sponsorship fees" was enforceable despite vagueness and that evidence of custom and usage "is always relevant to make definite words which would otherwise be vague and indefinite"); see also E. Allan Farnsworth, Contracts §§ 7.12, 7.13 at 461–76 (4th ed.2004).

*Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 327–28 (3d Cir. 2006)

The SACC alleges a course of dealing over many years. Chemo is a developer and manufacturer of active pharmaceutical ingredients. Betachem's business is to act as a middleman between Chemo and U.S. generic pharmaceutical companies. (SACC ¶¶ 45, 54) Having obtained an order from a U.S. generic pharmaceutical company, Betachem would place an order with Chemo, obtain the pharmaceuticals from Chemo and then sell them on to the U.S. generic company. (*Id.*) The difference in price between the order from the U.S. generic company and the order placed with Chemo represented the profit Betachem earned. (*Id.*) This arrangement between Chemo and Betachem was premised on a twenty year relationship between the owners of the two companies during which business dealings were conducted pursuant to handshakes and oral agreements. (*Id.* ¶¶ 52, 53, 56) No written contract set forth the terms of the arrangement between the two. (*Id.* ¶ 56) In the SACC Betachem alleges that "sometime in 1987 or 1988, Mr. Gaunt [Betachem's owner] met and established a relationship with Hugo Sigman, owner of Chemo." There are no allegations, however, as to the nature of any express

3

contractual terms that flowed from that meeting. (SACC ¶ 52) The individual transactions that occurred thereafter seem to have been arranged *ad hoc.*

On September 20, 2011, Chemo severed the business relationship. Chemo allegedly agreed orally to honor any existing and unfulfilled orders as well as any new orders Betachem may receive through December 31, 2011. That limited agreement, in the context of the parties' course of dealing, is alleged specifically enough. (*See* prior opinion, ECF no. 32 at 5 (citing case law regarding the requirement of definiteness)).

As to the limited set of late-2011 orders, the parties' course of dealing is relevant. And for many years they conducted their business on a handshake, working out reasonable commissions based on mutual trust and prevailing practices in the industry. (SACC ¶ 55) Apparently it worked; Betachem obtained orders and Chemo paid.

The basis of the damages figure may require discovery or interpolation of a reasonable term, but it is alleged. Surely Chemo, when it (allegedly) authorized Betachem to obtain orders through the end of 2011, did not reasonably expect Betachem to work for free. Now, at the pleading stage, it is reasonable to infer that the remaining transactions would continue on the same basis as before. To be sure, the "tail" orders are not alleged individually in the SACC, and the allegation that such orders even existed is less than artful. Betachem, frustratingly, does not simply come out and say that orders were pending in September and that it got further orders in October–December 2011. Still, Betachem says this was more or less an editing slip-up. The SACC refers to $182,000 owed, and from the schedule attached to the first version of the Counterclaims it is clear enough what that refers to. I will not elevate form over substance at this point. The SACC is deemed to refer to the schedule of orders attached to the First Amended Counterclaim (ECF no. 22; a second copy is attached to Betachem's brief in opposition to this motion, ECF no. 36-1).

Particularly in light of the SACC's newfound focus on the September 20, 2011 agreement and the late-2011 orders, I find these allegations sufficient to

4

set forth an implied contract, or an express oral contract with terms to be determined by implication

To the extent this was an agreement for sale of goods, Chemo continues to maintain that it is subject to the UCC statute of frauds. (*See* prior opinion, ECF no. 32 at 5–11) Betachem points out, however, that its SACC now focuses on orders already taken and transactions already performed. As to such transactions, the application of the statute of frauds is not so straightforward. *See* N.J. Stat. Ann. § 12A:2-201 & annot. The statute of frauds is an affirmative defense, and is not listed among the defenses routinely raised by a motion to dismiss. *See* Fed. R. Civ. P. 12(b). This therefore is not the unusual case in which its application is clear and obvious from the face of the complaint. *See Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997) ("On a Rule 12(b)(6) motion, an affirmative defense, such as the statute of frauds defense raised by EDS, is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff.")

The motion to dismiss the contract counts is denied.

### ii. Unjust Enrichment

In its SAC, Betachem also asserts claims for unjust enrichment based on Chemo's failure to pay the commissions Betachem alleges it is owed. (SACC ¶ 64) To state a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.*

As I stated above, Betachem performed work and obtained orders. This was not done gratuitously or officiously. It was done pursuant to a longstanding relationship, and then an alleged oral agreement on September 20, 2011. As to orders through the end of 2011, the SACC pleads with

reasonable specificity that Betachem performed with the expectation of remuneration. And, as I stated above, Chemo surely could not have expected, when authorizing orders through the end of 2011, that Betachem would work for no compensation.

As to Count 3, too, the motion to dismiss is denied.

### iii.   Motion for Sanctions under 28 U.S.C. § 1927

Chemo's motion to dismiss included an application for attorney's fees against counsel for Betachem pursuant to 28 U.S.C. § 1927 and the Court's inherent powers, on the grounds that the SACC were nearly word-for-word reproductions of the allegations previously found deficient by this Court, resulting in unnecessary motion practice in bringing the instant motion to dismiss. I have found that Betachem has pared down and refashioned its claims in a manner that strengthened them, and I have denied the motion to dismiss. The motion for sanctions is likewise denied.

### CONCLUSION

For the reasons set forth above, Plaintiff Chemo's motion to dismiss the SACC is denied and its motion for sanctions is denied. Discovery was stayed in this case pending resolution of this motion. The parties are directed to work out a discovery schedule and confirm it with Magistrate Judge Hammer within thirty days. An appropriate order will follow.

Dated:  March 7, 2016

_____
**KEVIN MCNULTY**
**United States District Judge**